ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

2008 DEC 19 PM 3: 02

CLERK _____
SO. DIST. OF GA.

|  |  |  |
|---|---|---|
| MELVIN SCOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CV 307-016 |
| | ) | |
| DERRYL HERMAN, Physician's Assistant, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Plaintiff, an inmate at Macon State Prison located in Oglethorpe, Georgia, commenced the above-captioned action pursuant to 42 U.S.C. § 1983.[1] Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). The matter is presently before the Court on Defendants' Motion to Dismiss. (Doc. no. 21). Plaintiff has responded to this motion (doc. nos. 25, 32),[2] and Defendants have replied (doc. nos. 28, 34). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED**, that Plaintiff's case be **DISMISSED**, and that this civil action be **CLOSED**.

### I. BACKGROUND

Plaintiff alleges that, while incarcerated at TSP he suffered from "dizzy spells

---

[1]At the time of the events forming the basis of the complaint Plaintiff was incarcerated at Telfair State Prison ("TSP").

[2]In light of the recent Eleventh Circuit opinion, Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted), *cert. denied*, No. 08-6665 (U.S. Dec. 8, 2008)), the Court ordered Plaintiff to supplement his opposition to Defendants' motion to dismiss, with appropriate supporting affidavits or other documentary evidence. (Doc. no. 31).

followed by aroma of ammonia frontal headaches, and seldom decreased vision in his right eye that lasted about twenty (20) seconds." (Doc. no. 1, p. 5). After filing several sick call slips, Plaintiff was seen by Defendant Herman, a physician's assistant. (Id.). Plaintiff described to Defendant Herman the problems he was having, and explained that he was also experiencing weakness in his right leg, numbness in his left leg, and pain in his lower back and neck. (Id.). According to Plaintiff, Defendant Herman refused to refer Plaintiff to a doctor. (Id.).

After filing several more sick call slips and informal grievances, Plaintiff was seen by Defendant Lift, a doctor. (Id. at 6). Plaintiff explained to Defendant Lift his problems, and Defendant Lift thereafter ordered an MRI of Plaintiff's lower back and legs. (Id.). Plaintiff asserts that Defendant Lift determined from the MRI that there was nothing wrong with Plaintiff. (Id.). However, according to Plaintiff, there was a report in his medical records indicating that a neurologist concluded that an MRI should have been done starting from where the problem was occurring, Plaintiff's neck and/or upper back. (Id.). Plaintiff's complaint asserts that Defendant Lift disagreed with this purported neurologist's report and refused to order any other tests. (Id.). After being refused any more tests and follow-up treatment, Plaintiff filed two administrative grievances that were denied by Defendant Thompson.[3] (Id.).

On February 21, 2006, Plaintiff was transferred to MSP. (Id. at 7). After being seen by the medical staff at MSP, it was determined that Plaintiff had spinal and disc problems

---

[3]According to Plaintiff's complaint, all these events occurred some time before November 29, 2004, when he filed his first administrative grievance. (Doc. no. 1, p. 6).

that required surgery. (Id.). Plaintiff underwent surgery in February of 2007. (Id.). Finally, according to Plaintiff, had Defendants properly diagnosed and treated Plaintiff at TSP, the deterioration of Plaintiff's back condition would not have occurred. (Id.).

The Court directed service of process on Defendants Herman and Lift, finding that Plaintiff had arguably stated a viable deliberate indifference claim against these Defendants.[4] (Doc. no. 12). Thereafter, Defendants filed the instant pre-answer motion to dismiss. (Doc. no. 21). Defendants seek dismissal of Plaintiff's complaint because, according to Defendants, Plaintiff's claims are barred by the statute of limitations, Plaintiff did not exhaust his administrative remedies, Defendants cannot be sued in their official capacities and are shielded by qualified immunity, and Plaintiff has failed to state a valid Eighth Amendment claim. (Id.). Plaintiff maintains that his claims are not barred by the statute of limitations, and that he has exhausted his available administrative remedies. (Doc. nos. 25, 32).

## II. DISCUSSION

### A. Applicable Legal Standard for Exhaustion

Where a defendant has filed a motion to dismiss based on failure to exhaust administrative remedies, as Defendants have here, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions.

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.

---

[4] The Court also recommended dismissal of Defendant Thompson, as well as Plaintiff's grievance claim. (Doc. no. 10). This recommendation was adopted by the presiding District Judge. (Doc. no. 13).

. . . .

> If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues. . . . The defendants bear the burden of proving that the plaintiff has failed to exhaust his administrative remedies. . . . Once the court makes findings on the disputed issues of fact, it then decides whether under those findings, the prisoner has exhausted his available administrative remedies.

Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted), *cert. denied*, No. 08-6665 (U.S. Dec. 8, 2008)). Where exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

## B.   Failure to Exhaust Administrative Remedies

Defendants contend that Plaintiff failed to exhaust administrative remedies. Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548

4

U.S. 81, 92 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90-91 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 548 U.S. 925 (2006). Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'" Salas v. Tillman, 162 Fed. App'x 918, 920 (11th Cir. Jan. 17, 2006) (quoting Johnson, 418 F.3d at 1155).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, an inmate must complete the administrative process *before* initiating suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*); see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

Within the Georgia Department of Corrections, the administrative grievance process is governed by SOP IIB05-0001. Once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance. See SOP IIB05-0001 § VI(B). The inmate has ten (10) calendar days from "the date the offender knew, or should have known,

of the facts giving rise to the grievance" to file the informal grievance. Id. § VI(B)(5). The timeliness requirements of the administrative process may be waived upon a showing of good cause. See id. § VI(C)(2) & (D). The SOP requires that an inmate be given a response to his informal grievance within ten (10) calendar days of its receipt by the inmate's counselor; the informal grievance procedure must be completed before the inmate will be issued a formal grievance. Id. § VI(B)(12)-(13).

If unsatisfied with the resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five (5) business days of his receipt of the written resolution of his informal grievance. Id. § VI(C)(2). Once the formal grievance is given to the counselor, the Warden/Superintendent has thirty (30) calendar days to respond. Id. § VI(C)(14). If the inmate is not satisfied with the Warden's response to the formal grievance, he has five (5) business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has ninety (90) calendar days after receipt of the grievance appeal to respond. Id. § VI(D)(2),(5). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. Id.

Following the Burnside test set forth *supra*, the Court first looks to Defendants' factual allegations. See Burnside, 541 F.3d at 1082-83. The only claim remaining in this action against Defendants is Plaintiff's claim that they were deliberately indifferent to his medical needs. This claim stems from Plaintiff's allegation that Defendants refused to follow up or treat Plaintiff's purported medical condition concerning his spine, even when he exhibited symptoms such as dizzy spells, weakness in his right leg, numbness in his left

leg, and pain in his lower back. (Doc. no. 1, pp. 5-7). Defendants state in their brief supporting their motion to dismiss that Plaintiff has not filed any grievance concerning his allegations that he should have been afforded an MRI "from the neck down as opposed to one on his lower back." (Doc. no. 21, p. 13). Defendants further state, "Neither has Plaintiff filed a grievance alleging that he was afforded improper diagnostic care which led to physical injury." (Id.). In reply, Plaintiff provides a conclusory statement without any supporting documentation. Plaintiff states:

> that he has clearly exhausted all of his administrative remedies which are germane to the constitutional claims raised in the instant action. [T]he Plaintiff grieved all of the relevant constitutional charges levied in his suit. However[,] because of the space limitation on the informal and formal grievance forms, it was impossible for [P]laintiff to include each and every minute detail establishing deliberate indifference.

(Doc. no. 25, p. 2). Plaintiff also submitted a supplemental response in which he provides an affidavit and several exhibits. (See doc. no. 32). Specifically, Plaintiff again maintains that he exhausted all of his administrative remedies by using the prisoner grievance procedure available to him. (Id. at 2-3). Plaintiff argues, concerning Grievance 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 (one of the grievances he claims shows he exhausted his administrative remedies), that he was unable to appeal that Grievance because he "couldn't make or demand that administration of Telfair State Prison to return those formal grievances within the time limit[] according to the SOP. . . ." (Id. at 2). Plaintiff also attaches several exhibits such as grievances and letters written to various organizations. (Id. at 5-25).

As Plaintiff's and Defendants' version of facts conflict, the Court must take Plaintiff's allegations as true. See Burnside, 541 F.3d at 1082-83. Thus, at this point,

Plaintiff's claim is not subject to dismissal. Next, however, under <u>Burnside</u>, the Court must make specific findings in order to resolve the disputed factual issues. <u>Id.</u>

Defendants argue that Plaintiff has not grieved the claims in his complaint. (Doc. no. 21, p. 11). Plaintiff asserts in his complaint that he filed two administrative grievances, numbers 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 and 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, concerning the issues in his complaint, and by these grievances, he claims to have exhausted his administrative remedies.[5] (Doc. no. 1, p. 3). In Grievance 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, Plaintiff complained that Nurse Gore was not allowing him to be seen by a physician's assistant or a doctor and as a remedy sought to be examined by a doctor at "Augusta MCI for peripheral vascular disease." (Doc. no. 21, Attach. 2). In Grievance 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, Plaintiff complained that Dr. Lift would not renew his profile for a bottom bunk and would not provide Plaintiff with refills for his medication. (<u>Id.</u> at Attach. 3).

Notably, in Grievance 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, Plaintiff complains that Nurse Gore did not permit him to be seen by a physician's assistant or doctor. Yet, Plaintiff's complaint is based on allegations that the physician's assistant, Defendant Herman, and the doctor, Defendant

---

[5]In his supplemental response to Defendants' motion to dismiss, Plaintiff argues that in addition to the previously noted Grievances (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 and 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) he also submitted Grievances 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 and 2-052-10-021 in his attempts to exhaust his administrative remedies.

Grievance 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 addresses an incident occurring on June 16, 2004, where a doctor (not named as a defendant in this case) reduced the dosage of Plaintiff's pain medication. (Doc. no. 32, Formal Grievance 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). Accordingly, Grievance 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 fails to address the allegations made in Plaintiff's complaint and does not further Plaintiff's claim that he exhausted his administrative remedies. Concerning Grievance 2-052-10-021, none of Plaintiff's exhibits reference any such grievance. Nor does his grievance history reveal that he was ever assigned a grievance with that number. (<u>See</u> doc. no. 21, Attach. 4).

Lift, were deliberately indifferent to his medical needs. Accordingly, the Court finds that Grievance 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 does not encompass the claims Plaintiff raised in his complaint.

The Court next turns its attention to Grievance 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. In this Grievance, Plaintiff complains that Defendant Lift would not refill his medication and would not renew Plaintiff's profile for a lower bunk. Initially, it is important to note that Plaintiff did not appeal the denial of his formal grievance. Failure to appeal the denial of this grievance in and of itself means that Plaintiff failed to exhaust his administrative remedies, as he is required to "us[e] all steps" in the administrative process. Woodford, 548 U.S. at 90-91.

Plaintiff attempts to get around his failure to exhaust his administrative remedies by arguing that they were not available to him. Here, the Court is not persuaded by Plaintiff's argument that the grievance procedures were not available to him. In this instance, the Court finds that Plaintiff has not shown that any prison officials at TSP prevented or otherwise inhibited him from exhausting administrative remedies prior to filing suit. Under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'"[6] Johnson, 418 F.3d at 1155, 1156. Likewise, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159

_____

[6]Whether that possibility may be slight is irrelevant. The Eleventh Circuit has explained that, even if the likelihood of obtaining administrative relief is akin to that of being struck by lightning, an inmate must still exhaust administrative remedies. See Alexander, 159 F.3d at 1325 (quoting Irwin v. Hawk, 40 F.3d 347, 349 (11th Cir. 1994) ("No doubt denial *is* the likeliest outcome, but that is not sufficient reason for waiving the requirement of exhaustion. Light[]ning may strike; and even if it doesn't, in denying relief the [administrative authority] may give a statement of its reasons that is helpful to the district court in considering the merits.")).

F.3d at 1326. As the Court has noted *supra*, the plain language of § 1997e(a) forbids any inquiry except into whether administrative remedies are "available."

In order to demonstrate that administrative remedies were unavailable, Plaintiff must point to specific facts showing that prison staff inhibited him from utilizing the grievance process. See Boyd v. Corr. Corp. of Am., 380 F.3d 989, 998 (6th Cir. 2004) ("nonspecific allegations of fear" and "subjective feeling[s] of futility" no excuse for failure to exhaust administrative remedies). Plaintiff cannot show that administrative remedies were unavailable simply by making a blanket allegation without any supporting evidence. Of course, those federal courts to consider the issue have held that threats of violent reprisal can, under certain circumstances, render administrative remedies "unavailable" or otherwise justify an inmate's failure to pursue them. See, e.g., Hemphill v. New York, 380 F.3d 680, 686-91 (2d Cir. 2004). More generally, courts have held that prison officials may, as a result of their own conduct, become equitably estopped from relying upon § 1997e(a).[7, 8]

Of particular note, in Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999), the Eleventh Circuit explained that prison officials cannot "unequivocally" tell an inmate that resort to administrative remedies is "precluded" or "even prohibited" and then rely upon § 1997e(a) to argue that the inmate failed to exhaust available administrative remedies.

---

[7]See, e.g., Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004) (*per curiam*); Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001); Wright v. Hollingsworth, 260 F.3d 357, 358 n.2 (5th Cir. 2001).

[8]To the extent Plaintiff is arguing that Defendants should be estopped from relying on § 1997e(a) because of their own misconduct, it is his burden to establish his entitlement to this equitable remedy. See Lewis v. Washington, 300 F.3d 829, 834 (7th Cir. 2002).

Taken together, these cases stand for the simple proposition that prison officials should not benefit from conduct which inhibits an inmate from properly exhausting administrative remedies. That principle of law does not alter the key inquiry--whether administrative remedies were actually "available" to Plaintiff prior to the filing of the instant suit. As set forth above, Plaintiff has failed to demonstrate that administrative remedies were unavailable following the alleged excessive use of force.

Admittedly, the Eleventh Circuit has expressed concern when prison officials tell a prisoner "unequivocally" that further resort to the administrative process is "futile, even prohibited." Miller, 196 F.3d at 1194. However, the instant case is far removed from the Eleventh Circuit's concerns in Miller. First, in Miller the plaintiff relied upon actual documentary evidence proving that he had been instructed by prison officials that an administrative appeal was prohibited. Id. In contrast, Plaintiff has presented no evidence, save his own self-serving statements, and his statements are squarely contradicted by the record.

More importantly, Plaintiff's credibility is undermined by the evidence, which shows that Plaintiff repeatedly availed himself of the grievance process and appealed grievances both before and after he submitted Grievance 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.[9] (Doc. no. 21, Attach. 4).

In this regard, it is not improper for the Court to demand some evidence beyond Plaintiff's own self-serving statements showing that administrative remedies were not available. In Kozuh v. Nichols, No. 05-15207, 2006 WL 1716049, at *2 (11th Cir. June 22,

---

[9] To this end, nowhere in any of his filings does Plaintiff proffer that he requested permission to file an out of time appeal to his grievance.

2006), the Eleventh Circuit rejected a prisoner's claim "that he was 'thwarted' when officials refused to respond to his grievances, leaving the grievance procedure unavailable." In rejecting Kozuh's argument for lack of evidence, the Eleventh Circuit noted the existence of contrary evidence that "Kozuh was able to file numerous informal complaints." Id. at *3. The instant case is similar. Although Plaintiff maintains otherwise, there is ample evidence in the record from which to conclude that the grievance process was available to Plaintiff concerning Grievance 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.

Even if Plaintiff had appealed Grievance 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, this Grievance, similar to Grievance 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, does not address the issues raised in Plaintiff's complaint concerning his spinal issues. In his complaint, Plaintiff argues that Defendants were deliberately indifferent to his medical needs because they refused to perform more tests and follow-up treatments concerning Plaintiff's symptoms of dizziness and the weakness in his right leg, numbness in his left leg, and pain in his lower back and neck. Accordingly, the Court also finds that Grievance 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 does not encompass the claims Plaintiff raised in his complaint.

Plaintiff contends that he did exhaust his administrative remedies and that "because of the space limitations on the informal and formal grievance forms, it was impossible for plaintiff to include each and every minute detail establishing deliberate indifference." (Doc. no. 25, p. 2). The Court disagrees with Plaintiff's contention that he simply omitted the "minute" details of his deliberate indifference claim sanctioned by the Court. The grievances filed by Plaintiff, as discussed above, did not encompass even the general allegations of Plaintiff's complaint.

In sum, the Court finds that Plaintiff failed to address any of the allegations mentioned in his complaint in Grievance 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 or 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, and he failed to appeal Grievance 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. Under the exhaustion rules stated above, Plaintiff must properly exhaust all administrative remedies before bringing his claim in federal court. Under the <u>Burnside</u> test, the Court finds that Plaintiff has failed to exhaust his administrative remedies within the Georgia Department of Corrections, and thus his complaint should be dismissed.[10]

### III. CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED**, that Plaintiff's case be **DISMISSED**, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 19th day of December, 2008, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[10]The Court's conclusion in this regard pretermits consideration of Defendants' remaining arguments.